UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENIE M. B., an Individual, | Case No.: 2:18-02051 ADS |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| ANDREW M. SAUL¹, Commissioner of Social Security, | |
| Defendant. | |

I. **INTRODUCTION**

Plaintiff Genie M. B.² ("Plaintiff") challenges the Defendant Commissioner of

Social Security's (hereinafter "Commissioner" or "Defendant") denial of her applications

---

¹ The Complaint, and thus the docket caption, do not name the Commissioner. The parties list Nancy A. Berryhill as the Acting Commissioner in the Joint Stipulation. On June 17, 2019, Saul became the Commissioner of Social Security. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).
² Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

for a period of disability and disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Plaintiff contends that the Administrative Law Judge ("ALJ") improperly evaluated the medical opinion evidence, as well as her subjective statements. For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.[3]

## II. FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain uncontested facts relevant to this appeal. Prior to filing her application for social security benefits, Plaintiff last worked on June 19, 2013, her alleged disability onset date. (Administrative Record "AR" 222, 224, 241, 245). Plaintiff's application alleges disability based on "discs and scoliosis." (AR 115, 245). Her employment history indicates that she worked as a manager in advertising from 2002 until her cessation of work in 2012. (AR 233-39, 246, 254). Before that, from 1998 to 2002, she was a recorder in the home-lending industry. (Id.) Plaintiff testified that she stopped working because she couldn't take the constant pain in her lower back from sitting behind a computer. (AR 122-23, 125, 128). This unbearable pain affected her ability to concentrate. (AR 123, 128). She took pain medication, which helped "a little bit." (AR 123). She also had injections but they didn't help as much. (AR 123). Her treating physician, Dr. Hrair Darakjian, suggested neck surgery, but she declined it because she was "too afraid." (AR 123-24, 868). She was not recommended for back surgery. (AR 123-24). She can take the neck pain, but not the back pain from sitting. (AR 124, 128). She also experiences numbness in her upper

---

[3] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Docket("Dkt.") Nos. 14, 16].

extremities and left side, headaches, and chronic obstructive pulmonary disease ("COPD") from smoking. (AR 125, 128-31).

On August 14, 2014, Dr. Darakjian evaluated Plaintiff for her complaints of difficulty sitting, standing, and walking more than 30 minutes at a time. (AR 644). The cervical examination revealed 80% range of motion "with pain at extremes of motion," but no focal neurological deficit. (Id.). The lumbar examination revealed normal heel-toe gait, spasm and tenderness in the paraspinal muscles, 75% range of motion "with pain at the extremes of motion," but no focal neurological deficit. (Id.) Dr. Darakjian diagnosed Plaintiff with cervical and lumbar spondylosis with disc disease. (AR 645). He concluded the evaluation by stating "[d]isability is extended," refilling her medication, and indicating Plaintiff should return for a follow-up appointment in six weeks. (Id.)

On October 17, 2014, Dr. Darakjian completed a three-page, check-box "MEDICAL OPINION RE: ABILITY TO DO PHYSICAL ACTIVITIES" questionnaire. (AR 647-49). Dr. Darakjian stated that he had treated Plaintiff for cervical and lumbar disc disease monthly, but he did not specify for what period of time. (AR 647). He repeated his diagnosis of cervical and lumbar disc disease, and he stated that prognosis was "guarded." (Id.) The doctor opined that Plaintiff (1) could walk "0" city blocks without rest; (2) could sit for 30 minutes and stand for 20 minutes at one time, and for less than 2 hours total in an eight-hour working day; (3) would need a job that permitted shifting positions at will; (4) could lift and carry no more than 10 pounds and had a limited ability to reach, handle, and finger bilaterally; (5) could never climb ladders, but could occasionally twist, stoop, crouch, and climb stairs; and (6) would require six unscheduled breaks, each for 20 minutes, every workday. (AR 647-49). As a

result of these limitations, Dr. Darakjian anticipated Plaintiff would likely miss work more than twice a month. (AR 649).

On July 7, 2016, Dr. Lawrence Leiter completed a "MEDICAL OPINION QUESTIONNAIRE PHYSICAL ACTIVITIES." (AR 738-40). He diagnosed Plaintiff with "COPD" and "[s]pondylosis [with d]isc disease," and stated her prognosis was "poor for recovery," but "good for life." (AR 738). He opined that Plaintiff (1) could sit for 30 minutes and stand for 10 minutes at one time; (2) could sit for less than two hours and stand/walk for less than two hours total in an eight-hour workday; (3) would not need to shift positions at will, but would need to elevate her legs; (4) could never lift any weight and had a limited ability to reach, handle, and finger bilaterally; (5) could never twist or climb ladders, but could occasionally stoop, crouch, and climb stairs; (6) would require 30 minute unscheduled breaks every half hour during the workday; and (7) should avoid all environmental exposures except perfume. (AR 747-40). As a result of these limitations, the doctor anticipated that Plaintiff would be absent from work more than twice a month. (AR 740). At the end of the questionnaire, Dr. Leiter handwrote that "[t]his information is all according to Patient[.]" (Id.).

### III. PROCEEDINGS BELOW

#### A. Procedural History

Plaintiff protectively filed her application for DIB on March 14, 2014, alleging disability beginning June 19, 2013 (AR 20, 115, 222-32). Plaintiff's claim was denied initially on June 13, 2014 (AR 144, 155-58), and upon reconsideration on September 4, 2014 (AR 154, 162-66). Plaintiff filed an application for SSI on June 6, 2015, also alleging disability beginning June 19, 2013, and it was escalated. (AR 20, 115, 222-32). A hearing was held before ALJ Sally C. Reason on August 31, 2016. (AR 113-36).

Plaintiff, represented by counsel[4], appeared and testified at the hearing, as did a vocational expert, Gail Maron. (Id.)

On November 25, 2016, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[5] (AR 20-39). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on January 19, 2018. (AR 1-7). Plaintiff then filed this action in District Court on March 13, 2018, challenging the ALJ's decision. [Dkt. No. 1].

### B. **Summary of ALJ Decision After Hearing**

In the decision (AR 20-39), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[6] 20 C.F.R. § 404.1520(a)(4). At **step one**, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since June 19, 2013, the alleged onset date.

---

[4] The transcript initially mentions "X" as the attorney (AR 113, 115) and that Plaintiff had a "representative" (AR 115), which could have meant a non-lawyer. However, later entries in the transcript, the decision, appointment of representative, and other documents make it clear that Plaintiff was represented by an attorney at the hearing. (AR 20, 111, 116, 286-90).

[5] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A).

[6] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. §404.1520).

(AR 22). At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) degenerative disc disease, with myofascial pain; and (b) COPD. (Id.).

At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (AR 31). The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[7] "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[8] except posturals are limited to occasionally." (AR 32).

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff could perform her past relevant work as an advertising manager or as a mortgage loan computation clerk. (AR 38). The ALJ noted, "[n]either of these jobs requires the performance of work-related activities precluded by the claimant's [RFC] . . ." (Id.). The ALJ did not proceed to **step five**. (AR 39). Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social

---

[7] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[8] "Light work" is defined as
> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

Security Act, from June 19, 2013, through the date of the decision, November 25, 2016. (AR 39).

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff raises two issues for review: (1) whether the ALJ properly analyzed the medical opinion evidence; and (2) whether the ALJ properly evaluated Plaintiff's subjective statements. [Dkt. No. 19 (Joint Stipulation), 12]. Specifically, Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of her treating physicians. In addition, Plaintiff contends the ALJ improperly discounted her statements regarding the nature and severity of her conditions.

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless, that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted); Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

### C. Whether The ALJ Properly Evaluated Treating Physician Opinions

Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Darakjian and Dr. Leiter because they establish that she is disabled, and more weight should have been assigned to them because they were from treating physicians.

1. <u>Standard for Weighing Medical Opinions</u>

The ALJ must consider all medical opinion evidence. 20 C.F. R. §§ 404.1527(b), 416.927(b). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." <u>Lester</u>, 81 F.3d at 830 (citing <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987)). Where the treating doctor's opinion is not contradicted by another doctor, it may only be rejected for "clear and convincing" reasons. <u>Id.</u> (citing <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017) (quoting <u>Bayliss</u>, 427 F.3d at 1216). In <u>Trevizo</u>, the Ninth Circuit addressed the factors to be considered in assessing a treating physician's opinion.

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. <u>Id.</u> § 404.1527(c)(2)-(6)."

871 F.3d at 675.

"Substantial evidence" means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing <u>Robbins</u>, 466 F.3d at 882). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

[or her] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding ALJ had properly disregarded a treating physician's opinion by setting forth specific and legitimate reasons for rejecting the physician's opinion that were supported by the entire record).

### 2. The ALJ Gave Specific and Legitimate Reasons, Supported by Substantial Evidence, for Rejecting the Treating Physician Opinions

Preliminarily, the Court notes the ALJ did not reject the treating physician opinions in their entirety. The ALJ gave "some weight" to Dr. Darakjian's August 2014 opinion, and "minimal weight" to Dr. Darakjian's October 2014 opinion and Dr. Leitner's July 2016 opinion. (AR 36-37). By assigning "some," or even "minimal" weight, the ALJ necessarily gave consideration and credited aspects of those opinions. (AR 33). Indeed, in the RFC, the ALJ limited Plaintiff to light work with postural limited to occasionally, which at least partially reflected aspects of the treating opinions. (AR 32).

To the extent the ALJ did not fully adopt the limitations in the opinions, she complied with Magallanes and provided specific and legitimate reasons for doing so that are supported by the entire record.

#### a. Dr. Darakjian's August 2014 Opinion

In the decision, the ALJ detailed the findings and opinion of Dr. Darakjian's August 2014 opinion, acknowledged that he was a treating source and an orthopedic specialist, and then provided at least four specific and legitimate reasons for giving it less than controlling weight. (AR 36).

First, the ALJ noted that Dr. Darakjian's opinion stated that Plaintiff's pain persisted despite conservative measures, "including physical therapy." (AR 36, 644). But, the ALJ explained, Plaintiff had declined physical therapy and didn't start until 2015, nearly a full year after Dr. Darakjian prepared his report. (AR 36). This reason is partially supported by the record. The ALJ correctly noted that Facey Medical Group offered Plaintiff physical therapy in May 2013, but she declined it and a pain-management referral. (AR 36, 433 (treatment-plan note indicating Plaintiff "declines physical therapy or pain management referral"). Plaintiff points out that Dr. Darakjian also recommended physical therapy in June 2013 [Dkt. No. 19, Joint Stipulation, 17], but just over a month later she reported it helped only "a little," and she stopped. (AR 635-36, 655, 660). It does not appear that she started physical therapy in earnest until 2015. Accordingly, although the ALJ may have overlooked this momentary attempt at physical therapy, she nonetheless properly relied on the overarching inconsistency between Dr. Darakjian's opinion that Plaintiff was not responsive to conservative treatment of physical therapy and the fact that the treatment was not given a fair shake until well after his report was written. See, e.g., Kennelly v. Astrue, 313 F. App'x 977, 978-79 (9th Cir. 2009) (ALJ properly discounted physician recommendations that were inconsistent with treatment notes).

Second, the ALJ relied on the conflict between the medical evidence and the conclusions in the opinion. (AR 36). For example, the ALJ noted that the magnetic resonance imaging ("MRI") and objective imaging mentioned in the doctor's opinion "do not confirm significant degeneration." (Id.). Dr. Darakjian's opinion relied on a June 4, 2013 MRI of the lumbar and cervical spine, but he mentioned only the "moderate" findings. (AR 644). However, the MRIs also reveal numerous

"unremarkable," "mild," "mild to moderate" objective findings. (AR 638-41). The ALJ could properly rely on the inconsistency between the doctor's opinion of total disability, and these moderate and less-than-moderate findings in the objective evidence. See Batson v. Comm'r of Social Security, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole . . . or by objective medical findings"); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is . . . inadequately supported by clinical findings."); Evans v. Colvin, 2016 WL 4744115, at *12 (C.D. Cal. Sept. 12, 2016) (records showing "only mild to moderate abnormalities inconsistent with [examining physician]'s opinion of total disability"), aff'd, 759 F. App'x 606 (9th Cir. 2019).

Third, the ALJ noted that although Dr. Darakjian's clinical findings showed pain "at extremes of motion," they nonetheless indicated Plaintiff had nearly a full range of motion in her spine. (AR 36). Indeed, the doctor concluded Plaintiff retained 80% of the range of motion in her cervical spine, and 75% of the range of motion in her lumbar spine. (AR 644). The ALJ could properly rely on the inconsistency between the doctor's own clinical findings and his opinion. See Shavin v. Comm'r Soc. Sec. Admin., 488 F. App'x 223, 224 (9th Cir. 2012) (ALJ may reject treating physician's opinion by "noting legitimate inconsistencies and ambiguities in the doctor's analysis or conflicting lab test results, reports, or testimony")(internal citation omitted); Buford v. Colvin, 2014 WL 33214, at *5 (W.D. Wash. Jan. 3, 2014) (ALJ properly discounted treating physician's opinion because it was inconsistent with doctor's own findings, including that claimant's range of motion was limited only at the "extremes of rotation"); Schubert v. Astrue, 2011

WL 4104936, at *11 (D. Or. Aug. 9, 2011) (physician treatment note reflecting cervical range of motion at "75% of normal" is "consistent with [a] lack of debilitating findings").

Fourth, the ALJ properly observed that Dr. Darakjian's conclusion that "[d]isability is extended" (AR 36, 645), is a determination reserved to the Commissioner. See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ as to the existence of an impairment or the ultimate determination of disability."); 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (statements by a medical source that a claimant is "disabled" or "unable to work" are "not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner").

Plaintiff contends that the ALJ's notation that Dr. Darakjian "appear[ed]" to rely on Plaintiff's self reports," is an insufficient reason to discount the opinion. [Dkt. No. 19, Joint Stipulation, 17, 20]. To the extent the ALJ intended to give less weight to the August 2014 opinion for that reason, the Court agrees with Plaintiff that it is insufficient. Unlike Dr. Leiter, who signified that the information in his opinion was "all according to Patient" (AR 740), Dr. Darakjian's opinion contains no such restriction. Regardless, even if the ALJ erred, any such error is harmless in light of the of the other valid reasons provided. See Brown-Hunter, 806 F.3d at 492; Molina, 674 F.3d at 1115.

b. Dr. Darakjian's October 2014 Opinion

In the decision, the ALJ briefly summarized Dr. Darakjian's October 2014 opinion, noting that it "essentially limited [Plaintiff] to less than a full range of sedentary exertion, including restrictions in [Plaintiff]'s ability to sustain gross or fine

hand manipulation." (AR 37). She then provided two specific and legitimate reasons for giving it less than controlling weight:

> The medical evidence, as indicated, confirms degenerative changes in [Plaintiff]'s neck and back. The clinical records do not confirm neurological abnormalities: gait and station are normal, and [Plaintiff] repeatedly denied numbness, weakness, or falls. [Plaintiff] has had multiple visits with no pain or spasm on exam. She also has admitted to good control of her pain with prescribed medication. The undersigned therefore finds that Dr. Darakjian's assessment of [Plaintiff's] functioning is inconsistent with other clinical and objective evidence in the record; and for these reasons, it is given minimal weight.

(AR 37).

As mentioned, in discounting an opinion, the ALJ may rely on inconsistencies between its conclusions and the objective medical evidence. Batson, 359 F.3d at 1195. In addition to the clinical findings already discussed, Dr. Darakjian's opinion of total disability conflicts with: (1) his own notes indicating Plaintiff had no focal neurological deficit, and could walk with normal heel-toe gait (AR 644); (2) other grossly normal musculoskeletal findings including normal strength, sensation, reflex, and range of motion (AR 433, 656, 732, 757, 808, 844, 850, 870-71); (3) findings that Plaintiff could walk with normal gait and without an assistive device (AR 655, 660, 732, 757, 805, 844, 869-70); and (4) findings that Plaintiff could bend down and reach within four inches of her toes and grip at least 40 pounds bilaterally (AR 870-71). The ALJ's reasoning is adequately supported by the record.

Similarly, the ALJ properly noted that Plaintiff admitted her condition was controlled. (AR 37). For example, in January 2016, Plaintiff reported that her back and neck pain were "under good control with present dosage." (AR 685). Also, in August 2016, she reported her back pain and scoliosis were "under control" with her present

medications and dosage. (AR 769.) She also testified at the hearing that medication helped, albeit "a little." (AR 123). Finally, physical therapy sessions show that her condition was controlled to the extent that she could stop physical-therapy exercises to take care of her fiancé, and she could enjoy swimming and walking. (AR 655, 660). Although she stated she was unable to do the latter "as long as she would like" (Id.), nothing requires Plaintiff to be unrestricted in her activities or to be pain free to work. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (disability benefits are intended for "people who are unable to work; awarding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated in the statute"). Accordingly, the ALJ properly relied on this factor. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (noting that impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (affirming non-disability finding in part because some of claimant's conditions had a "fair response" to medication and other conditions were "satisfactorily" controlled by medication and treatment).

c. Dr. Leiter's July 2016 Opinion

In the decision, the ALJ briefly summarized Dr. Leiter's July 2016 opinion, noted that he was a treating source, but declined to give it controlling or great weight for at least three valid reasons. (AR 37).

First, the ALJ relied on the conflict between the opinion and the objective clinical findings in the record. (AR 37). Although the ALJ addressed additional evidence than previously mentioned, the objective medical evidence already discussed above and

relied upon by the ALJ is "substantial evidence" sufficient to support the finding. See Lingenfelter, 504 F.3d at 1035; Batson, 359 F.3d at 1195; Thomas, 278 F.3d at 957.

Second, the ALJ again noted that Plaintiff's pain was controlled by medication, which was reflected in Dr. Leiter's own clinical records. (AR 37). This reason, as already explained, is supported by the record. See Kennelly, 313 F. App'x at 978-79; Warre, 439 F.3d at 1006; Odle, 707 F.2d at 440.

Third, and finally, the ALJ pointed out that Dr. Leitner was a family-practice and addiction-disorder physician, not an orthopedist. (AR 37, 116-17, 135). Plaintiff complains that "while the ALJ gave less weight to Dr. Leiter's opinion because he is not an orthopedist . . . the ALJ contradictorily failed to give any increased weight to Dr. Darakjian on the basis that he is an orthopedic surgeon." [Dkt. No. 19, Joint Stipulation, 16]. However, as noted, the ALJ specifically mentioned that Dr. Darakjian's qualifications both as a treating source "as well as an orthopedic specialist," but then permissibly discounted the opinion for the reasons discussed above. (AR 36). The ALJ properly considered specialization in considering both opinions. See Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) (explaining that opinion of a specialist about medical issues related to his or her area of specialization are given more weight than opinion of a nonspecialist, and holding that the opinion of a physiatrist (a specialist in physical medicine) was entitled to greater weight than that of a non-examining internist); 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) (Agency will "generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.")

Accordingly, the Court concludes that the ALJ provided "specific and legitimate" reasons based on substantial evidence for her giving little weight to Plaintiff's treating physicians' opinions.

**D. <u>Whether the ALJ Properly Evaluated Plaintiff's Testimony</u>**

Plaintiff asserts that the ALJ improperly evaluated her subjective complaints. Defendant contends that the ALJ appropriately found Plaintiff's testimony not fully supported by the record.

    1. <u>Legal Standard for Evaluating Claimant's Testimony</u>

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. <u>Benton ex rel. Benton v. Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003). Once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); <u>see also</u> <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain") (citation omitted)). Defendant does not contest, and thus appears to concede, that Plaintiff carried her burden of producing objective medical evidence of her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms.

Once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." <u>Benton</u>, 331 F.3d at 1040. To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably

produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 489 ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas, 278 F.3d at 958-59 (citing Light, 119 F.3d at 792). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959 (citing Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)).

### 2. The ALJ provided Clear and Convincing Reasons Supported by Substantial Evidence

Having carefully reviewed the record, the Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.[9] The ALJ found that Plaintiff's subjective complaints were not consistent with the

---

[9] The ALJ did not make a finding of malingering in her opinion. (AR 20-39). Thus, in discounting Plaintiff's subjective complaints, the ALJ was required to articulate specific, clear and convincing reasons. See Benton, 331 F.3d at 1040; Brown-Hunter, 806 F.3d at 489.

-18-

medical evidence of record, her failure to follow treatment advice (AR 123, 433, 660, 868), and medical control of her condition.   (AR 34-35).

Plaintiff fails to advance any argument regarding the reasons the ALJ discussed in the decision, and instead simply points to her work history.  [Dkt. No. 19 (Joint Stipulation), 36-37, 41].  Accordingly, she has not properly presented her challenge before the Court.  See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (claimant waived issues not raised before the district court); Owens v. Colvin, 2014 WL 5602884, at *4 (C.D. Cal. Nov. 4, 2014) (claimant's failure to discuss, or even acknowledge, ALJ's reliance on certain reasons waived any challenge to those aspects of ALJ's finding).

Even if the Court were not to find waiver, the ALJ's credibility determination is supported by the record.  The ALJ's reasoning for discounting Plaintiff's subjective complaints largely mirrors her reasoning for discounting the physician opinions.  As discussed above, those reasons are supported by the record, and they are legally sufficient.  See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis."); Molina, 674 F.3d at 1113-14 (ALJ did not err by discounting claimant's testimony based on failure to follow prescribed treatment); Lindquist v. Colvin, 588 F. App'x 544, 547 (9th Cir. 2014) (ALJ properly discounted claimant's testimony in part because symptoms were controlled by medication).

Based on these clear, convincing and specific reasons for partially rejecting Plaintiff's pain and limitations testimony and the substantial evidence to support her determination, the Court concludes that the ALJ did not commit error in discounting Plaintiff's testimony.

## V. **CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice.  Judgment shall be entered accordingly.

DATE: October 15, 2019

                         /s/ Autumn D. Spaeth
                         THE HONORABLE AUTUMN D. SPAETH
                         United States Magistrate Judge